1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STANLEY FINNEY,                          No.  2:12-cv-2805-TLN-EFB PS

12                   Plaintiff,

13         v.                                   ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14    SOCIAL SECURITY
      ADMINSTRATION,
15
                   Defendant.
16

17         Plaintiff is a state prisoner proceeding without counsel in this action brought under the

18    Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 522, *et seq.*[1]  Defendant, the Social Security

19    Administration ("SSA"), moves for summary judgment pursuant to Federal Rule of Civil

20    Procedure ("Rule") 56.  ECF No. 17.  Plaintiff has responded with a document styled as 'Motion

21    For Discovery In Accordance with FRCP 56(f).[2]  ECF No. 23.  He includes in that document his

22    opposition to the motion for summary judgment, as well as a request to conduct discovery

23    pursuant to Rule 56(d).  ECF No. 23.  He also includes his response to the court's August 1, 2013

24    order to show cause regarding his failure to file a timely opposition brief.  ECF No. 22.  For the

25         [1]  This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern
26    District of California Local Rule 302(c)(21).

27         [2]  "Former Rule 56(f) of the Federal Rules of Civil Procedure became Rule 56(d) under
      the 2010 Amendments to the Federal Rules."  *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 n.
28    7 (9th Cir. 2013).  Accordingly, the request is construed as pursuant to Rule 56(d).

1    reasons that follow, the August 1, 2013 order to show cause is discharged.  Further, it is

2    recommended that plaintiff's Rule 56(d) motion be denied and SSA's motion for summary

3    judgment be granted.

4    I.      Order to Show Cause

5       SSA's motion for summary judgment was filed on April 10, 2013.  ECF No. 17.

6    Plaintiff was granted an extension of time until May 29, 2013 to file an opposition or statement of

7    non-opposition to the motion.  ECF No. 19.  That deadline passed without plaintiff filing either.

8    Therefore, on August 1, 2013, plaintiff was ordered to show cause, in writing, no later than

9    August 30, 2013, why sanctions should not be imposed for his failure to timely file an opposition

10    or statement of non-opposition.  ECF No. 22.

11       Plaintiff filed his response to the order to show cause on September 9, 2013.  He has

12    also submitted his opposition to the motion for summary judgment.  ECF No. 24.  He explains

13    that he is currently taking three types of medication due to head trauma that he suffered after he

14    was attacked by two inmates on March 13, 2013.  *Id*. at 2-3; *see* ECF No. 16 at 3.  He claims that

15    this medication has side effects that do "not agree with him . . . ."  ECF No. 24 at 2.  He also

16    indicated that he has experienced difficulty obtaining his legal property, and was having trouble

17    gaining access to the law library at CSP-LAC.  *Id*.  In light of plaintiff's representations, the order

18    to show cause is discharged and no sanctions shall be imposed.

19    II.      Relevant Facts

20       Plaintiff was convicted of robbery and kidnapping and sentenced to life in prison.  Pl.'s

21    Mot. for Disc., ECF No. 23 at 27.  He claims that he was convicted based on eyewitness

22    testimony from Hipolito Luis Ortega, who testified on behalf of the government.  *Id*. at 27, 32.

23    Plaintiff contends that officers with the Los Angeles Police Department ("L.A.P.D.") assisted Mr.

24    Ortega in obtaining a social security number ("SSN") in exchange for his testimony.  *Id*. at 32.

25    Plaintiff further alleges that his witness, Carlos Policzo, was not given similar assistance because,

26    had he actually testified, his statements would have impeached Mr. Ortega's testimony.

27    /////

28    /////

Plaintiff contends that he is attempting to gather evidence to support his claim that the L.A.P.D. purchased Mr. Ortega's testimony by providing him with an SSN.  On April 13, 2011, plaintiff sent via letter addressed to the SSA a FOIA request for:

1.   A list of the names of all immigrants between the years of 1989 and 2000 in the residential area of Los Angeles , California, that received a social security number with the assistance of the Los Angeles Police Department and/or the Los Angeles District Attorney's Office.

2.   Whether Mr. Hipolito Luis Ortega, a resident of Los Angeles, California, an immigrant from Mexico, received a social security number in the year 1989.  The specific month and day that he (1) applied for and received his social security number.  Also, the same date for when it was approved by your department.  Records illustrating whether he received any assistance from the Los Angeles Police Department and/or the District Attorney's Office in this matter.  He was one of the immigrants who was contacted by the LA. P.D. [sic] RAMPART DIVISION in 1989.  This matter is already a public record with the Los Angeles Superior Court.

3.   Whether Mr. Carlos Polictzo (also spelled Policzo), a resident of Los Angeles, California, possibly an immigrant from Mexico, received assistance by the same.

4.   Whether any similar records illustrate meetings within/without your department, intra and extra, about any of the same foregoing matters.

Declaration of Dawn S. Wiggins ISO Def.'s Mot for Summ. J., ECF No. 17-2 at Ex. 1.

By letter dated May 27, 2011, the SSA informed plaintiff that it had received his request and that it would be processed as soon as possible.  *Id*. at Ex. 2.  On June 8, 2011, the SSA responded to plaintiff's request, informing him that the information he requested was protected by the Privacy Act of 1974.  The letter explained that the production of the records he requested would violate the privacy interests of other individuals and therefore the records are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(6).  The letter also informed plaintiff that if he disagreed with the decision, he could appeal it to the Executive Director for the Office of Privacy and Disclosure.  *Id*. at Ex. 3.

On July 8, 2011, plaintiff appealed the SSA's June 8, 2011 action, arguing that his FOIA request should not have been denied because he did not seek any information that would have been provided on a social security application.  He claims that he only sought "records that illustrate where Los Angeles Police Department, state or federal local prosecutors or their

3

personnel, had provided assistance to our country's immigrants, including, but not limited to the proscribed names (Mr. Polictzo and Mr. Ortega), that received Social Security numbers between the years 1989-2000." *Id*. at 14 (Ex. 4).  Plaintiff argued that the public interest in such information outweighs any privacy interest, and therefore the information he sought is not protected under 5 U.S.C. § 552(b)(6).  *Id*. at 12-17 (Ex. 4).  On September 30, 2011, the Office of Privacy and Disclosure sent plaintiff a letter responding to his appeal.  *Id*. at Ex. 6.  The letter stated that the SSA conducted a thorough search of its records, but did not discover any documents responsive to the following requests:

1. A list of names of all immigrants from 1989 to 2000 in the residential area of Los Angeles, California, that received a Social Security Number (SSN) with the assistance of the Los Angeles Police Department or Los Angeles District Attorney's Office;

2. Records for Mr. Luis Ortega and Mr. Polictzo showing if they received a SSN;

3. Specific months and date that Mr. Ortega and Mr. Polictzo applied and were approved for a SSN;

4. Records indicating if Mr. Ortega and Mr. Polictzo received any assistance by the Los Angeles Police Department or Los Angeles District Attorney's Office in obtaining an SSN; and,

5. Similar records held by Social Security Administration that illustrate meetings and pertain to the foregoing matters mentioned above.

*Id.*  The letter also informed plaintiff that if he believed that the decision was incorrect, he could seek review in a district court.  *Id*.

III.    Procedural Background

Plaintiff initiated this action on November 15, 2012.  ECF No. 1.  He alleges in his complaint that (1) the SSA failed to conduct a sufficient search of its records, and (2) that the SSA waived its right to assert any FOIA exemption as a basis for not producing the requested records.  *Id*.  On April 10, 2013, SSA filed a motion for summary judgment.  ECF No. 17.  Submitted with the motion is a declaration from the Deputy Executive Director for the Office of Privacy and Disclosure in the Office of the General Counsel at the SSA, which outlines the search that was conducted in response to plaintiff's FOIA request.  ECF No. 17-2 .

4

As noted, plaintiff included in his oppositions to summary judgment a request to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d). ECF No. 23. He also filed a motion to expand the record 3 days after he filed his Rule 56(d) motion. ECF No. 26. That motion requests that the court consider additional exhibits in deciding his Rule 56(d) motion. SSA's opposition to the Rule 56(d) motion states that it considered these documents in drafting its opposition and therefore the agency has no objections to the filing and consideration of this document. See ECF No. 39 at 36. Accordingly, it and its exhibits have been considered by the court.

While his motion requests leave to conduct discovery, the motion is in substance an opposition to SSA's motion for summary judgment. On December 18, 2013, SSA filed an opposition to plaintiff's Rule 56(d) motion. ECF No. 39. The opposition included a supplemental declaration, which provides a more detailed description of the searches conducted by the SSA than the declaration filed with its motion for summary judgment. ECF No. 39-1. Plaintiff was provided an opportunity to respond to SSA's opposition and the supplemental declaration, *see* ECF No. 42, but he declined to do so.

IV.     Legal Standards

     A.     FOIA

The purpose of the FOIA is to inform citizens about "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989). FOIA mandates a policy of broad disclosure of government documents when production is properly requested. 5 U.S.C. § 552(a)(3). The general philosophy of the FOIA is full agency disclosure, unless information is exempted under clearly delineated statutory language. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 260–61 (1976). "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

/////

5

An agency may deny disclosure of its records only if the information falls within one of the nine statutory exemptions to the disclosure requirement under 5 U.S.C. § 552(b).  *Multnomah County Medical Soc'y v. Scott*, 825 F.2d 1410, 1413 (9th Cir. 1987).  The government has the burden of establishing that one of the exemptions applies.  *Id*.  Exemptions to FOIA are narrowly construed.  *John Doe Agency*, 493 U.S. at 151.  To satisfy its burden, the agency cannot rely on "conclusory and generalized allegations of exemptions."  *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  Instead, the agency's proof must be "detailed enough for the district court to make a de novo assessment of the government's claim of exemption."  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting *Doyle v. FBI*, 722 F.2d 554, 555–56 (9th Cir. 1983)).

B.  Summary Judgment in FOIA Cases

In a FOIA case, "federal jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (internal quotation marks omitted).  "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements."  *Id*.  "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'"  *Id*. at 142 n. 3.  Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Lawyers Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all FOIA determinations should be resolved on summary judgment.").

An issue in many FOIA summary judgment motions is the agency's search.  The agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).  The "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather

6

1   whether the search for those documents was adequate." *Id.*  The agency may demonstrate the

2   adequacy of its search by submitting affidavits describing the agency's search procedures that

3   "are relatively detailed in their description of the files searched and the search procedures, and [ ]

4   are nonconclusory and not impugned by evidence of bad faith." *Zemansky*, 767 F.2d at 573.

5   "Once an agency makes a showing that it conducted a search in good faith, 'with reasonable

6   detail, that the search method . . . was reasonably calculated to uncover all relevant documents,'

7   the agency's position can only be rebutted 'by showing that the agency's search was not made in

8   good faith.'" *Kelly v. U.S. Census Bureau*, 2011 WL 3962489, at *2 (N.D. Cal. Sept.7, 2011)

9   (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) and *Maynard v. C.I.A.*,

10   986 F.2d 547, 560 (1st Cir. 1993)).  "Agency affidavits enjoy a presumption of good faith that

11   withstands purely speculative claims about the existence and discoverability of other documents."

12   *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp.  292, 294 (D.D.C. 1997); *Miller v. U.S. Dep't*

13   *of State*, 779 F.2d 1378, 1383 (8th Cir. 1985).  For example, a requester's speculation that

14   responsive records "could have been destroyed or removed" does not create a genuine issue for

15   trial.  *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor is the fact that

16   somewhere there may be additional responsive documents relevant to the question of whether the

17   agency's search was adequate.  *NYC Apparel FZE v. U.S. Customs & Border Prot.*, 484 F. Supp.

18   2d 77, 88 (D.D.C. 2007).

19        C.  Federal Rule of Civil Procedure 56(d) and Discovery in FOIA Cases

20        Rule 56(d) permits a party opposing a motion for summary judgment to request an order

21   deferring the time to respond to the motion and permitting that party to conduct additional

22   discovery upon an adequate factual showing.  *See* Fed. R. Civ. P. 56(d) (requiring party making

23   such request to show "by affidavit or declaration that, for specified reasons, it cannot present facts

24   essential to justify its opposition.").  A Rule 56(d) affidavit must identify "the specific facts that

25   further discovery would reveal, and explain why those facts would preclude summary judgment."

26   *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  The party must

27   also demonstrate that "there is some basis for believing that the information sought actually

28   exists."  *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009).

1   "Procedurally, district courts typically decide FOIA cases on summary judgment before a

2   plaintiff can conduct discovery." *Lawyers for Civil Rights of SF Bay Area*, 534 F. Supp. 2d at

3   1132 (citing *Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994)). "While

4   ordinarily the discovery process grants each party access to evidence, in FOIA and Privacy Act

5   cases, discovery is limited because the underlying case revolves around the propriety of revealing

6   certain documents." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008).

7       The threshold question in considering leave to conduct discovery in a FOIA case is

8   whether the "agency's declarations are reasonably detailed, submitted in good faith and the court

9   is satisfied that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d

10  29, 35 (D.D.C. 2002).  Discovery should not be permitted "when it appears that discovery would

11  only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that

12  might impugn the affidavits." *Military Audit Project v. Casey*, 656 F.2d 724, 751-52 (D.C. Cir.

13  1981) (quotations omitted).  "If a court is satisfied that the affidavits supplied by the agency meet

14  the established standards for summary judgment in a FOIA case and the plaintiff has not

15  adequately called these submissions into question, no factual dispute remains, and discovery is

16  inappropriate." *Lawyers for Civil Rights of SF Bay Area*, 534 F. Supp. 2d at 1132.

17  IV.    SSA's Motion for Summary Judgment[3]

18      The SSA argues that it performed searches reasonably calculated to discover documents

19  relevant to plaintiff's request and that its searches satisfy the FOIA's requirements.  ECF No. 17

20  at 8-11.  It also argues, in the alternative, that to the extent that its search was not adequate, it did

21  not have to produce any documents in response to plaintiff's request because such documents

22  would be properly withheld under FOIA exemption 6.  *Id*. at 11-16.

23      The SSA submitted the declaration of Dawn Wiggins in support of its.  ECF No. 17-2.  In

24  response, plaintiff argues that the declaration is insufficient to establish that an adequate search

25  _____

26      [3]  SSA's motion for summary judgment included a notice to plaintiff informing him of the
    requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

27  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir.
    1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th

28  Cir. 1988).

1   was conducted.  The SSA, although not conceding the issue, apparently realized that Ms.

2   Wiggins's declaration was lacking the requisite detail to establish the adequacy of the search.

3   Accordingly, SSA filed a supplemental declaration with its opposition to plaintiff's request to

4   conduct discovery.  ECF No. 39-1.  That latter declaration does demonstrate that an adequate

5   search was conducted.

6          Ms. Wiggins declares that she is the Deputy Director for the Office of Privacy and

7   Disclosure and is responsible for processing the SSA's FOIA requests.  ECF No. 39-1 ¶ 1.  The

8   SSA has 10 regional offices and over 1,300 field offices.  *Id*. ¶ 2.  The SSA has issued over 450

9   million Social Security numbers ("SSN").   *Id*.  The SSA maintains records related to these SSNs,

10  as well as records relating to the SSA's administrative, operating and business practices.  *Id*.  The

11  SSA maintains SSNs and information about SSNs in a Privacy Act system of records entitled the

12  Master Files of Social Security Number Holders and SSN Applications (Numident), System of

13  Record Number 60-0058.  *Id*. ¶ 7.  Due to the large number of records maintained by the SSA, it

14  cannot locate records pertaining to individuals unless the agency is provided the individual's SSN

15  or other sufficient identifying information.  *Id*. ¶ 5.  To locate an individual's SSN, the agency

16  generally requires the person's full name, date of birth, and both parents' names.  *Id*.

17         In response to plaintiff's appeal, the SSA searched its records to determine whether it had

18  any documents responsive to plaintiff's request for records concerning the Los Angeles Police

19  Department and the Los Angeles District Attorney's Office's involvement with individuals

20  obtaining SSNs form 1989 to 2000.  *Id*. ¶ 8.  Specifically, the Office of Privacy and Disclosure

21  requested the SSA's San Francisco Regional Office and the Office of Inspector General to search

22  for documents responsive to plaintiff's FOIA request.  *Id*.  The SSA selected these locations for

23  its search because the San Francisco Regional Office has jurisdiction over the day-to-day

24  operations for the residential Los Angeles area and the Office of Inspector General has the most

25  involvement with law enforcement.  ECF No. 17-2 ¶ 13.

26         The San Francisco Regional Office advised Ms. Wiggins that it searched its paper files

27  and electronic files for documents responsive to plaintiff's FOIA request.   ECF No. 39-1 ¶ 9.

28  /////

1   Specifically, the San Francisco Regional Office had both its Tri-Counties Area Director Office

2   and its Los Angeles Metropolitan Area Director Office perform searches since these offices serve

3   the Los Angeles area.  The offices searched a variety of paper files, which are indexed by name or

4   topic, that they determined may contain responsive documents.  *Id.*  They also conducted an

5   electronic search of their M and S shared drives, which includes shared files that are generally

6   accessible to either all staff or management.  *Id.*  The search terms utilized in performing the

7   searches of their electronic drives and paper files included LAPD, Rampart, Los Angeles District

8   Attorney, and LAPD Rampart Division.  *Id.*  Any documents identified during these searches

9   were further reviewed to determine whether they were responsive to plaintiff's FOIA request.  *Id.*

10         As for the Office of Inspector General, it had three of its components, the Office of Audit,

11   Office of Technology and Resources Management, and Office of Investigation, conduct similar

12   searches.  *Id.* ¶ 10.  These components searched report files from 1989 to 2000, allegation

13   comment records, and records in the OIG's central database.  *Id.*  This included both paper and

14   electronic records.  *Id.*  These searches also included LAPD, Rampart, Los Angeles District

15   Attorney, and LAPD Rampart Division as search terms.  *Id.*  All records identified by these

16   searches were further reviewed to determine whether they were responsive to plaintiff's request.

17   *Id.*  The Office of Inspector General also asked long-time employees in the San Francisco area to

18   see if anyone was familiar with the subject of plaintiff's request.  *Id.*

19         The locations and records searched by the SSA were those the agency determined would

20   most likely contain records responsive to plaintiff's FOIA request.  *Id.* ¶ 11.  These searches,

21   however, failed to uncover any responsive records.  ECF No. 17-2 ¶ 12.

22         The declarations submitted by SSA establishes that it conducted adequate searches in

23   response to plaintiff's request for records pertaining to the L.A.P.D. and L.A. District Attorney's

24   office assisting immigrants in obtaining SSNs.  The SSA conducted searches at the offices the

25   agency believed to most likely possess documents responsive to plaintiff's request.  Furthermore,

26   given the search terms utilized, the records searched were reasonably calculated to uncover

27   records containing the names of immigrants residing in the Los Angeles area between 1989 and

28   2000 that received an SSN with the assistance of the L.A.P.D. or the L.A. District Attorney's

1    Office.  This would have included any records reflecting assistance Mr. Ortega and Mr. Polictzo

2    received from these agencies in obtaining an SSN.

3          Plaintiff argues that there is reason to believe that the SSA did not conduct its search in

4    good faith.  ECF No. 23 at 11.  First, plaintiff argues that Ms. Wiggins is the individual who

5    initially denied his FOIA request on the ground that all records requested were exempt from

6    disclosure, but she is also the person who is attesting to the sufficiency of the search.  *Id*.  He

7    claims that this establishes that the search was not conducted in good faith.  Nothing in those facts

8    shows bad faith on behalf of the SSA.  Instead, it shows that the SSA reviewed plaintiff's appeal

9    and concluded that Ms. Wiggins's initial decision was incorrect.  There mere fact that the

10   Executive Director of the Office of Privacy and Disclosure disagreed with Ms. Wiggins's initial

11   decision does not show the search for responsive records was conducted in bad faith.

12         Plaintiff also challenges the sufficiency of Ms. Wiggins's declaration in establishing that

13   an adequate search was conducted.  *Id*. at 12.  He contends that the declaration relies on vague

14   search descriptions.  *Id*.  While the first Wiggins declaration was insufficient to show whether an

15   adequate search was conducted, the supplemental declaration cured that deficiency.   Plaintiff has

16   not challenged the adequacy of Ms. Wiggins's supplemental declaration, nor could he.  As

17   explained above, it shows that an adequate search was conducted regarding plaintiff's request for

18   records pertaining to immigrants receiving assistance from local government agencies.

19   Accordingly, plaintiff has not shown that the search conducted was performed in bad faith.

20         The searches performed, however, did not encompass all the records requested by

21   plaintiff.  The searches were limited to records regarding assistance the L.A.P.D. and L.A.

22   District Attorney's Office provided to immigrants trying to obtaining an SSN.  The searches

23   conducted were not reasonably calculated to discover records showing whether Mr. Ortega

24   received an SSN number in 1989, or records showing the dates Mr. Ortega and Mr. Polictzo

25   applied for, were approved for, and received SSNs.  Accordingly, the agency failed to conduct an

26   adequate search in regards to these particular requests.   However, as discussed below, any such

27   records are exempt from disclosure.

28   /////

1    SSA argues that, even though it conducted a search, all documents that would have been

2    uncovered in response to plaintiff's FOIA request could have been withheld under exemption 6.

3    ECF No. 17 at 11-16.[4]   To withhold a document based on one of the nine exemptions, the agency

4    is usually required to "identify[] each document withheld, the statutory exemption claimed, and a

5    particularized explanation of how disclosure of the particular document would damage the

6    interest protected by the claimed exemption." *Wiener v. F.B.I.*, 943 F.2d 972, 978 (9th Cir.

7    1991).   However, the Supreme Court has held that where certain circumstances support an

8    inference of confidentiality, an agency may claim an exemption without detailing the

9    characteristics of a particular record. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 177 (1993).

10    Exemption 6 allows an agency to withhold "personnel and medical files and similar files

11    the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

12    U.S.C. § 522(b)(6).  This exemption was "intended to cover detailed Government records on an

13    individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash.*

14    *Post Co.*, 456 U.S. 595, 602 (1982).  The term "similar files" has a "broad, rather than narrow,

15    meaning." *Id*. at 600.  "When disclosure of information which applies to a particular individual is

16    sought from Government records, courts must determine whether release of the information

17    would constitute a clearly unwarranted invasion of that person's privacy." *Id*. at 602.

18    Here, plaintiff seeks records containing information specific to Mr. Ortega and Mr.

19    Polictzo, and therefore the records would constitute "similar files."  The court must therefore

20    consider whether production of the information contained in such records "would constitute a

21    clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6).  "To answer this

22    question, [the court] must balance the privacy interest protected by the exemptions against the

23    public interest in government openness that would be served by disclosure." *Prudential*

24    *Locations LLC v. U.S. Dep't of Hous. & Urban Dev.*, 739 F.3d 424, 430 (9th Cir. 2013).

25

26    [4] Contrary to the allegations in the complaint, SSA did not waive its right to assert
exemption 6 as a basis for denying his FOIA request because it failed to state in its response to his

27    appeal that this was the reason for its decision. *See* ECF No. 1 at 8; *Young v. C.I.A.*, 972 F.2d
536, 538-39 (4th Cir. 1992) ("[A]n agency does not waive FOIA exemptions by not raising them

28    during the administrative process.").

1    "A broad range of personal privacy interests are cognizable under FOIA, including under

2    Exemption 6."  *Id.*  Individuals have a personal privacy interest in controlling information

3    concerning his or her person, which includes "keeping personal facts away from the public eye."

4    *Id.* at 431.

5            SSA argues that the records requested in relation to when Mr. Ortega and Mr. Polictzo

6    applied for and were approved for SSNs are private in nature.  ECF No. 17 at 13.  Indeed,

7    responding to this request would require production of the applications submitted by these

8    individual, which would contains the applicant's full name, previous SSN, place and date of birth,

9    mother's birth name, mother's SSN, father's name, father SSN, daytime phone number, and

10   mailing address.  *See* ECF No. 17 at 22 (Ex. B) (copy of an application for social security card).

11   There is a privacy interest in such information.  *See Associated Press v. U.S. Dep't of Justice*, 549

12   F.3d 62, 65 (2nd Cir. 2008) ("Personal information, including a citizen's name, address, and

13   criminal history, has been found to implicate a privacy interest cognizable under the FOIA

14   exemptions." (citing *U.S. Dep't of Def. v. Fed. Labor Relations Auth.,* 510 U.S. 487, 497 (1994)).

15   The information sought is specific to these individuals, and would consist of their private

16   information.

17           In his original FOIA request and again in his opposition to SSA's motion for summary

18   judgment, however, plaintiff argues that such records must be produced because the "public has

19   an interest about the LAPD RAMPART and their contacts with particular federal agencies to

20   accommodate them in their corruption; specifically, intimidating and coercing witnesses and

21   victims of crime into cooperating with them in exchange for providing them with" SSNs.  *See*

22   ECF No. 17-2 at 6 (Ex. A).  As provided above, the SSA conducted an adequate search for

23   records pertaining to the L.A.P.D. and L.A. District Attorney's Office helping immigrants obtain

24   SSNs.  No responsive documents were found.  As to plaintiff's request for documents showing

25   when Mr. Ortega and Mr. Polictzo applied for, were approved for, and received SSNs, there is no

26   indication that these documents will promote the asserted public interest.  Rather, it is apparent

27   that plaintiff has a personal interest in the information sought.  Specifically, plaintiff is attempting

28   to find evidence to assist him in overturning his conviction.  *See* ECF No. 23 at 26-35.  However,

13

1    plaintiff's "personal stake in using the requested records to attack his convictions does not count

2    in the calculation of the public interest." *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002); *see*

3    *Nishnic v. United States Dep't of Justice*, 671 F. Supp. 776, 791 (D.D.C. 1987) (requester's

4    interest in Brady material is a "decidedly private interest").

5        Furthermore, "the only relevant public interest in the FOIA balancing analysis [is] the

6    extent to which disclosure of the information sought would 'she[d] light on an agency's

7    performance of its statutory duties' or otherwise let citizens know 'what their government is up

8    to.'" *Dep't of Def.,* 510 U.S. at 497 (1994) (quoting *Reporters Comm.*, 489 U.S. at 773)

9    (alteration in original).  Records specific to these two individuals would shed little light on how

10   the SSA is performing its statutory duties.

11       Accordingly, the portion of plaintiff's FOIA request pertaining to Mr. Ortega and Mr.

12   Polictzo is categorically exempted under exemption 6.  Furthermore, the SSA conducted an

13   adequate search for the remaining requested records.  Therefore, SSA is entitled to summary

14   judgment.

15   V.    Plaintiff's Rule 56(d) Motion

16       In response to SSA's motion for summary judgment, plaintiff filed a motion for discovery

17   pursuant to Federal Rule of Civil Procedure 56(d).  While the majority of the motion is directed to

18   attacking the merits of plaintiff's motion for summary judgment, the pleading does request leave

19   to conduct discovery in this case.

20        Plaintiff first contends that he should be granted leave to conduct discovery because no

21   discovery has been conducted to date.  ECF No. 23 at 8.  Discovery, however, is rarely needed in

22   FOIA actions.  *See Lawyers for Civil Rights of SF Bay Area*, 534 F. Supp. 2d at 1132

23   ("Procedurally, district courts typically decide FOIA cases on summary judgment before a

24   plaintiff can conduct discovery.").  Plaintiff has not shown any specific need for discovery in this

25   action.

26       Next, plaintiff states that discovery is needed to show what methods SSA used to conduct

27   its search.  ECF No. 23 at 9.  This argument is based on the inadequacy of Ms. Wiggins's first

28   declaration.  *Id*.  As discussed above, Ms. Wiggins's supplemental declaration adequately recites

1   the specific details of the search that was conducted.  Plaintiff does not argue otherwise.  The

2   SSA has shown the particulars as to the scope and specific methods of the search and those details

3   demonstrate that SSA performed a search reasonably calculated to uncover the requested records.

4   Therefore, discovery is not needed in this case.  *See Lawyers for Civil Rights of SF Bay Area*, 534

5   F. Supp. 2d at 1132 ("If a court is satisfied that the affidavits supplied by the agency meet the

6   established standards for summary judgment in a FOIA case and the plaintiff has not adequately

7   called these submissions into question, no factual dispute remains, and discovery is

8   inappropriate.").

9          Plaintiff also argues that discovery will lead to evidence showing a link between the

10  L.A.P.D. and the SSA issuing SSNs to immigrants.  As previously discussed, the SSA conducted

11  an adequate search that did not uncover records responsive to this issue.  The court will not grant

12  leave to conduct discovery based on speculation that records exist that would show that SSA

13  failed to conduct an adequate search.  *See Military Audit Project*, 656 F.2d at 751-52 (discovery

14  should not be permitted "when it appears that discovery would only . . . afford [the plaintiff] an

15  opportunity to pursue a bare hope of falling upon something that might impugn the affidavits.").

16  Since SSA conducted an adequate search, there is no need to conduct discovery.  Accordingly,

17  plaintiff's Rule 56(d) motion must be denied.

18  VI.  Conclusion

19         Accordingly, it is hereby ORDERED that the August 1, 2013 order to show cause is

20  discharged.  No sanctions are imposed.

21         Further, it is RECOMMENDED that:

22         1.  Defendant's motion for summary judgment, ECF No. 17, be granted;

23         2.  Plaintiff's motion to conduct discovery pursuant to Federal Rule of Civil Procedure

24  56(d), ECF No. 23, be denied; and

25         3.  The Clerk of the Court be directed to enter judgment in defendant's favor and close

26  this case.

27         These findings and recommendations are submitted to the United States District Judge

28  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1    after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is cautioned that

4    the failure to file objections within the specified time may waive the right to appeal the District

5    Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d

6    1153 (9th Cir. 1991).

7    DATED:  March 14, 2014.

8                                                      EDMUND F. BRENNAN
                                                       UNITED STATES MAGISTRATE JUDGE

16